
**FILED** CM
4/19/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No.    21 CR 433 |
| v. | ) ) | Hon.  Sara L. Ellis |
| | ) | |
| SARAH JACKSON ABEDELAL, | ) | |
| JENNIFER McBRIDE, | ) | |
| also known as "Jennifer Ellen," and | ) | |
| WILLIAM JACKSON | ) | **SECOND SUPERSEDING** |
| | ) | **INDICTMENT** |

## COUNT ONE

The SPECIAL MAY 2021 GRAND JURY charges:

1.     At times material to this second superseding indictment:

### Relevant Entities and Individuals

a.     Chicago Public Schools ("CPS") was an independent school district and unit of local government governed by the Chicago Board of Education ("CBOE").

b.     Brennemann Elementary School ("Brennemann School") was an elementary school operated by CPS, located at 4251 North Clarendon Avenue, Chicago, Illinois.  The school provided classroom education to approximately four hundred students ranging from pre-kindergarten to the eighth grade.

c.     Defendant SARAH JACKSON ABEDELAL was employed by CPS as the principal of Brennemann School.  ABEDELAL managed and supervised the day-to-day operations of Brennemann School.  Her duties included, among other things, hiring, firing, and supervising business operations managers, business

managers, teachers, teaching assistants, special education classroom assistants, clerks, and other school employees; overseeing the school's finances including employee payroll, as well as overtime, which was referred to as Supplemental Pay or Extended Day Pay, and procurement of school supplies, services, and equipment.

      d.    Business operations managers, business managers, and clerks reported directly to ABEDELAL and performed duties relating to, among other things, the processing and payment of wages and overtime to school employees, the procurement of school supplies and equipment, and the processing and payment of school bills and invoices.

      e.    Defendant JENNIFER McBRIDE, also known as "Jennifer Ellen," was employed as the assistant principal at Brennemann School and assisted ABEDELAL in managing and supervising the day-to-day operations of the school including the payment and processing of wages and the procurement of school supplies, services, and equipment.

      f.    Defendant WILLIAM JACKSON was employed as a special education classroom assistant and later as a clerk and business manager at Brennemann School.

      g.    Business Manager B was employed as a special education classroom assistant and later as business operations manager at Brennemann School.

      h.    Business Manager C worked as a clerk and later as a business manager at Brennemann School.

i. Company A was a certified CPS vendor of school supplies and equipment.

j. Individual A was the sales representative to CPS for Company A.

## Applicable CPS Policies

2. According to the CPS Policy Handbook and the CPS Code of Ethics, ABEDELAL, McBRIDE, JACKSON, Business Manager B and Business Manager C owed a fiduciary duty to CBOE and CPS, the taxpayers of the city of Chicago and the State of Illinois, and were required at all times to act in the highest ethical manner to preserve the public trust of residents and taxpayers.

a. The CPS Employee Policy Handbook, Discipline and Due Process Policy, the CPS Code of Ethics, and other CPS guidelines set forth standards of conduct for Chicago Public School employees, including the following:

i. CPS property and funds were to be used only for CPS purposes and in the manner specified or directed by CPS or CBOE. No official or employee was to engage in or permit the misuse of Board property or funds.

ii. No CPS official or employee was allowed to falsify an attendance or other employment record.

iii. No CPS official or employee was allowed to steal or take unauthorized possession of CPS or CBOE property.

iv. No CPS official or employee was allowed to direct, authorize, allow, or ask an employee to perform services with or without pay, for unauthorized purposes, or accepting the benefits of such performance.

v. All CPS officials and employees were required to report violations of the Code of Ethics to the Ethics Advisor.

vi. All CPS officials and employees covered by the Code of Ethics were required to abide by any and all applicable local, state, and federal laws, rules, and regulations.

## The Scheme

3. Beginning in or around Spring 2012, and continuing to approximately in or around June 2019, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

SARAH JACKSON ABEDELAL,
JENNIFER McBRIDE,
also known as "Jennifer Ellen," and
WILLIAM JACKSON,

defendants herein, as well as others known and unknown to the grand jury, knowingly devised, intended to devise, and participated in a scheme to defraud CPS and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises, and by the concealment of material facts, as further described below.

4. Defendants ABEDELAL, McBRIDE, JACKSON and others known and unknown to the Grand Jury devised and carried out a scheme to defraud CPS by (1) awarding individuals with overtime pay for hours that they did not work; (2) requiring certain individuals who were awarded overtime pay for hours that they did not work to bring the overtime pay in cash or gift cards to defendants ABEDELAL and McBRIDE, and (3) submitting fraudulent purchase orders and invoices for paper

4

and school supplies to CPS while directing Individual A to supply electronics and gift cards for the benefit of ABEDELAL.

## *Overtime Fraud*

5.   It was part of the scheme that ABEDELAL and McBRIDE, assisted by JACKSON, Business Manager B, Business Manager C, and others, obtained money and property belonging to CPS by fraudulently causing certain school employees (collectively, the "School Employees") to receive overtime pay for hours that they did not work, and requiring certain of the School Employees to give the unearned overtime pay in cash or in the form of pre-paid gift cards to ABEDELAL and McBRIDE.

6.   It was further part of the scheme that ABEDELAL told certain of the School Employees that she would authorize overtime pay for hours which the School Employees would not be required to work, and directed these School Employees to deliver the cash proceeds of the unearned overtime, or in one case, prepaid gift cards, to ABEDELAL or McBRIDE.

7.   It was further part of the scheme that ABEDELAL falsely and fraudulently represented to the School Employees that the unearned overtime money was going to be used to pay legitimate expenses incurred by Brennemann School, when in fact ABEDELAL intended to convert the money to her own personal use and benefit.

8.   It was further part of the scheme that ABEDELAL and McBRIDE, as well as JACKSON, Business Manager B and Business Manager C, acting at the direction of ABEDELAL and McBRIDE, fraudulently prepared and caused to be

prepared overtime sheets that falsely represented that the School Employees had worked substantial amounts of overtime hours that ABEDELAL, McBRIDE, JACKSON, Business Manager B and Business Manager C knew the School Employees had not in fact worked.

9.     It was further part of the scheme that ABEDELAL, McBRIDE, JACKSON, Business Manager B and Business Manager C provided false and fraudulent overtime sheets to School Employees for their signatures and caused them to sign the overtime sheets certifying that the School Employees had worked all the overtime hours listed on the overtime sheets, when in fact ABEDELAL, McBRIDE, JACKSON, Business Manager B and Business Manager C knew that the School Employees had not worked a substantial portion of the overtime hours listed on the sheets.

10.     It was further part of the scheme that JACKSON, Business Manager B and Business Manager C, acting at the direction of ABEDELAL and McBRIDE, caused false and fraudulent overtime amounts to be entered into the CPS electronic payroll system, thereby causing paychecks containing the unearned overtime to be sent to the School Employees' bank accounts by electronic funds transfer.

11.     It was further part of the scheme that ABEDELAL directed certain of the School Employees to withdraw the unearned overtime money in cash on the day their paychecks were deposited into their bank accounts (less the portion of the unearned overtime needed to cover federal and state taxes on the unearned overtime money), and to deliver the cash directly to ABEDELAL or to McBRIDE.

12.     It was further part of the scheme that ABEDELAL met with the School Employees on paydays to collect the unearned overtime in cash from them.

13.     It was further part of the scheme that McBRIDE collected unearned overtime in cash on a number of occasions from a School Employee and delivered the cash to ABEDELAL.

14.     It was further part of the scheme that McBRIDE directed a School Employee to falsely fill out and to backdate timesheets listing hours of overtime which the School Employee had never worked to cover up the unearned overtime cash which McBRIDE and ABEDELAL had collected from the School Employee.

15.     It was further part of the scheme that ABEDELAL directed Business Manager B to collect cash from a School Employee who received unearned overtime hours and to bring the cash to ABEDELAL.

16.     It was further part of the scheme that ABEDELAL and McBRIDE agreed to arrange for CPS to fund a fictitious summer school program at Brennemann School so that McBRIDE could receive overtime pay for hours that she did not work.

17.     It was further part of the scheme that ABEDELAL and Business Manager C, acting at the direction of ABEDELAL, entered McBRIDE's employee identification number into the timekeeping system at Brennemann School in order to create the false appearance that McBRIDE was at the school working at the fictitious summer school program.

18.     It was further part of the scheme that McBRIDE signed and caused to be submitted to ABEDELAL overtime sheets in which McBRIDE falsely certified that she had worked 40 hours a week at the purported summer school program between on or about July 2, 2017, and on or about August 30, 2017, knowing that the summer school program was fictitious and that she had not performed any such work. ABEDELAL approved the overtime sheets knowing they were false and fraudulent.

19.     It was further part of the scheme that ABEDELAL and McBRIDE fraudulently caused CPS to send to McBRIDE's bank account by electronic funds transfer paychecks totaling approximately $12,448 for overtime hours that McBRIDE had purportedly worked at the summer school program, when in fact ABEDELAL and McBRIDE knew that the summer school program was fictitious and that McBRIDE had not performed such work.

20.     It was further part of the scheme that following a visit by investigators from the CPS Office of Inspector General on or about March 7, 2019, to gather evidence concerning claims of overtime fraud, McBRIDE directed a School Employee to lie to the investigators and to tell the investigators that the School Employee had worked all the hours of overtime the School Employee had received.

21.     It was further part of the scheme that following a visit by investigators on or about March 7, 2019, McBRIDE directed ABEDELAL to buy a "burner" phone, so McBRIDE could conceal her communications with ABEDELAL from investigators.

### *Procurement Fraud*

22.    It was further part of the scheme that ABEDELAL, JACKSON and Individual A submitted, and caused to be submitted, false purchase orders and false invoices totaling more than $45,000 to CPS, ostensibly for office and school supplies, when, in fact, they knew that the purchase orders and invoices were false, and were intended to conceal the receipt of iPhones, iPads, and approximately $30,000 of gift cards intended for the personal use of ABEDELAL.

23.    It was further part of the scheme that in or around February 2016, Individual A met ABEDELAL at Brennemann School and told ABEDELAL that (i) Company A could supply ABEDELAL with items for her personal (as opposed to official) use, such as an iPhone; (ii) Brennemann School would have to submit a false purchase order to CPS that would make it appear Brennemann School had submitted an order of legitimate school supplies; and (iii) Brennemann School would have to process for payment the false invoices thereafter generated by Company A which would appear on their face to be requests for payment for legitimate school supplies, but which were in truth meant to conceal and facilitate payment for the personal items ordered by ABEDELAL.

24.    It was further part of the scheme that in or around February 2016, Individual A met with JACKSON and explained the process of how to prepare and submit fraudulent purchase orders and process the false invoices for the personal items that ABEDELAL wanted.

9

25.    It was further part of the scheme that over the next several months, ABEDELAL directed Individual A to purchase multiple iPhones and iPads, as well as tens of thousands of dollars of prepaid gift cards for the benefit of ABEDELAL.

26.    It was further part of the scheme that ABEDELAL, JACKSON, and Individual A used the name of nominee companies on some of the purchase orders and invoices in order to conceal the amount of money being sent to Company A.

27.    It was further part of the scheme that ABEDELAL, Individual A and JACKSON prepared and submitted, and caused to be prepared and submitted, fraudulent purchase orders and false invoices to CPS for school and office supplies to match the cost of the iPhones, iPads, and prepaid gift cards Company A would provide for ABEDELAL's personal use.

28.    It was further part of the scheme that Individual A coordinated with JACKSON to submit and to cause to be submitted fraudulent purchase orders and fraudulent invoices for school and office supplies to CPS which matched the cost of the personal items ordered by ABEDELAL.

29.    It was further part of the scheme that ABEDELAL and JACKSON falsely notified CPS, and caused CPS to be falsely notified, that Brennemann School had received the school and office supplies listed in the false invoices prepared by or at the direction of Company A when in truth and fact they knew that Company A did not deliver the school and office supplies listed in the false invoices.

30.    It was further part of the scheme that Individual A submitted requests for cash advances to Company A for the expenses she planned to incur in purchasing prepaid gift cards for ABEDELAL.

31.    It was further part of the scheme that by the above means, ABEDELAL, McBRIDE, JACKSON, Business Manager B, Business Manager C, Individual A, and others did fraudulently obtain at least approximately $250,000 in CPS funds to which they were not entitled.

32.    It was further part of the scheme that ABEDELAL, McBRIDE, JACKSON, Business Manager B, Business Manager C, Individual A, and others did misrepresent, conceal, and hide, and cause to be concealed, misrepresented and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

33.    On or about October 7, 2016, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

SARAH JACKSON ABEDELAL,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings signs and signals, namely, electronic payroll instructions from a computer located in Illinois to a server located in Utah, that included a payroll payment instruction for a School Employee in the amount of approximately $2,628.96, based on a false overtime sheet submitted to CPS;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

The SPECIAL MAY 2021 GRAND JURY further charges:

1.     Paragraphs 1 through 32 of Count One are incorporated here.

2.     On or about June 1, 2018, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JENNIFER McBRIDE,
also known as "Jennifer Ellen,"

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings signs and signals, namely, electronic payroll instructions from a computer located in Illinois to a server located in Utah, that included a payroll payment instruction for a School Employee in the amount of approximately $4,503.53, based on a false overtime sheet submitted to CPS;

In violation of Title 18, United States Code, Section 1343.

## COUNT THREE

The SPECIAL MAY 2021 GRAND JURY further charges:

1.      Paragraphs 1 through 32 of Count One are incorporated here.

2.      On or about November 30, 2018, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JENNIFER McBRIDE,
also known as "Jennifer Ellen,"

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings signs and signals, namely, electronic payroll instructions from a computer located in Illinois to a server located in Utah, that included a payroll payment instruction for a School Employee in the amount of approximately $6,261.11, based on a false overtime sheet submitted to CPS;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR

The SPECIAL MAY 2021 GRAND JURY further charges:

1.     Paragraphs 1 through 32 of Count One are incorporated here.

2.     On or about December 28, 2018, at Chicago, in the Northern District of
Illinois, Eastern Division, and elsewhere,

JENNIFER McBRIDE,
also known as "Jennifer Ellen,"

defendant herein, for the purpose of executing the scheme, knowingly caused to be
transmitted by means of wire communication in interstate commerce certain writings
signs and signals, namely, electronic payroll instructions from a computer located in
Illinois to a server located in Utah, that included a payroll payment instruction for a
School Employee in the amount of approximately $3,247.85, based on a false overtime
sheet submitted to CPS;

In violation of Title 18, United States Code, Section 1343.

## **COUNT FIVE**

The SPECIAL MAY 2021 GRAND JURY further charges:

1.      Paragraphs 1 through 32 of Count One are incorporated here.

2.      On or about February 27, 2017, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### WILLIAM JACKSON,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings signs and signals, namely, electronic payroll instructions from a computer located in Illinois to a server located in Utah, that included a payroll payment instruction for a School Employee in the amount of approximately $2,350.18, based on a false overtime sheet submitted to CPS;

In violation of Title 18, United States Code, Section 1343.

## COUNT SIX

The SPECIAL MAY 2021 GRAND JURY further charges:

1.    Paragraphs 1 through 32 of Count One are incorporated here.

2.    On or about March 13, 2017, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### WILLIAM JACKSON,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings signs and signals, namely, electronic payroll instructions from a computer located in Illinois to a server located in Utah, that included a payroll payment instruction for a School Employee in the amount of approximately $2,964.09, based on a false overtime sheet submitted to CPS;

In violation of Title 18, United States Code, Section 1343.

## COUNT SEVEN

The SPECIAL MAY 2021 GRAND JURY further charges:

1.    Paragraphs 1 through 32 of Count One are incorporated here.

2.    On or about May 22, 2017, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### WILLIAM JACKSON,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings signs and signals, namely, electronic payroll instructions from a computer located in Illinois to a server located in Utah, that included a payroll payment instruction for a School Employee in the amount of approximately $2,964.08, based on a false overtime sheet submitted to CPS;

In violation of Title 18, United States Code, Section 1343.

## **COUNT EIGHT**

The SPECIAL MAY 2021 GRAND JURY further charges:

1.  Paragraphs 1 through 32 of Count One are incorporated here.

2.  On or about March 27, 2017, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### WILLIAM JACKSON,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings signs and signals, namely, electronic payroll instructions from a computer located in Illinois to a server located in Utah, that included a payroll payment instruction for a School Employee in the amount of approximately $2,373.20, based on a false overtime sheet submitted to CPS;

In violation of Title 18, United States Code, Section 1343.

## COUNT NINE

The SPECIAL MAY 2021 GRAND JURY further charges:

1.    Paragraphs 1 through 32 of Count One are incorporated here.

2.    On or about July 16, 2018, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JENNIFER McBRIDE,
also known as "Jennifer Ellen,"

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings signs and signals, namely, electronic payroll instructions from a computer located in Illinois to a server located in Utah, that included a payroll payment instruction for a School Employee in the amount of approximately $1,511.80, based on a false overtime sheet submitted to CPS;

In violation of Title 18, United States Code, Section 1343.

## **COUNT TEN**

The SPECIAL MAY 2021 GRAND JURY further charges:

1.    Paragraphs 1 through 32 of Count One are incorporated here.

2.    On or about March 24, 2017, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### WILLIAM JACKSON,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings signs and signals, namely, electronic payment instructions from a computer located in Illinois to a server located in Florida, that included a payment instruction to a Company A in the amount of approximately $8,128, based on a false invoice submitted by Company A to CPS;

In violation of Title 18, United States Code, Section 1343.

## COUNT ELEVEN

The SPECIAL MAY 2021 GRAND JURY further charges:

1.      Paragraphs 1 through 32 of Count One are incorporated here.

2.      On or about March 24, 2017, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### WILLIAM JACKSON,

defendant herein, for the purpose of executing the scheme, and attempting to do so, knowingly caused to be placed in an authorized depository for mail matter to be delivered by the Postal Service, namely a package which contained Chicago Board of Education check number 2017204848 in the amount of approximately $11,830, based on a false invoice which Company A caused to be submitted to CPS;

In violation of Title 18, United States Code, Section 1341.

## COUNT TWELVE

The SPECIAL MAY 2021 GRAND JURY further charges:

1.     Paragraphs 1 through 32  of Count One are incorporated here.

2.     On or about August 25, 2017, at Chicago, in the Northern District of

Illinois, Eastern Division, and elsewhere,

JENNIFER McBRIDE,
also known as "Jennifer Ellen,"

defendant herein, for the purpose of executing the scheme, knowingly caused to be

transmitted by means of wire communication in interstate commerce certain writings

signs and signals, namely, electronic payroll instructions from a computer located in

Illinois to a server located in Utah, that included a payroll payment instruction in the

amount of approximately $4,312.91, that was based on a false overtime sheet

submitted to CPS;

In   violation   of   Title   18,   United   States   Code,   Section   1343.

## **COUNT THIRTEEN**

The SPECIAL MAY 2021 GRAND JURY further charges:

1.    Paragraphs 1 through 32 of Count One are incorporated here.

2.    On or about September 11, 2017, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

**JENNIFER McBRIDE,**
also known as "Jennifer Ellen,"

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings signs and signals, namely, electronic payroll instructions from a computer located in Illinois to a server located in Utah, that included a payroll payment instruction in the amount of approximately $5,702.54, that was based on a false overtime sheet submitted to CPS;

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The SPECIAL MAY 2021 GRAND JURY alleges:

1.     Counts One through Thirteen of this second superseding indictment are incorporated here for the purpose of alleging forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.     Upon conviction of one or more of the offenses charged in violation of Title 18, United States Code, Sections 1341 and 1343 as set forth in Counts One through Thirteen of this second superseding indictment,

SARAH JACKSON ABEDELAL,
JENNIFER McBRIDE,
also known as "Jennifer Ellen," and
WILLIAM JACKSON,

defendants herein, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2146(c) any property, real or personal, which constitutes or is derived from proceeds traceable to the offense or offenses of conviction.  The property to be forfeited includes but is not limited to:

   a. The real property commonly known as 6505 South Woodlawn Avenue, Chicago, Illinois, legally described as follows:

   Lot Three (3) in the Subdivision of Lots 1 to 6 in Block One (1) in Wait and Munro's Addition to Hyde Park, being a subdivision in the West Half (1/2) of the North East Quarter(1/4) of section 23, Township 38, North, Range 14, East of the Third Principal Meridian in Cook County, Illinois.

   PIN No. 20-23-211-003-0000

b. A sum of money equal to the proceeds derived from the offense or offenses of conviction.

3.  If, as a result of any act or omission by the defendants, any of the forfeitable property described above:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____

FOREPERSON

_____
Signed by Amarjeet S. Bhachu
on behalf of the
UNITED STATES ATTORNEY